IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AIMEE D. PHILLIPS,                    )
                                      )
                    Plaintiff,        )     Civil No. 03-3109-HO
                                      )     Lead Case
                                      )     Consolidated Cases
                                      )
          v.                          )     O R D E R
                                      )
LITHIA MOTORS, INC., an Oregon        )
corporation; HUTCHINS IMPORTED        )
MOTORS, INC., an Oregon               )
corporation, dba Lithia Toyota        )
of Springfield; LITHIA MOTORS         )
SUPPORT SERVICES, INC.;               )
and FIRST TECHNOLOGY CREDIT           )
UNION, dba Oregon Metro Branch        )
of First Technology Credit            )
Union, fka Oregon Metro Federal       )
Credit Union,                         )
                                      )
                    Defendants.       )
_____ )

        This court previously granted motions to dismiss plaintiffs' RICO

claims and all other claims for the resulting lack of jurisdiction.

Plaintiffs asked for the opportunity to file an amended complaint,

which the court allowed.  Plaintiffs' counsel responded by filing

additional complaints and adding numerous plaintiffs and a new type

of claim to this action.  The second amended complaint is 507 pages

long and alleges 153 claims for relief.  Plaintiff's second amended RICO statement is 67 pages long.  Once again, all parties move to dismiss.  Plaintiff's counsel spent several months crafting a response to the motions.

Plaintiffs allege claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. against Lithia Motors, Inc.; Lithia HPI, Inc.; Lithia Medford Hon, Inc.; Lithia Motors Support Services, Inc.; Hutchins Imported Motors, Inc.; and numerous individual officers and employees of various Lithia operated entities.  Plaintiffs also allege Oregon RICO claims, fraud, Unlawful Trade Practices Act claims and have also alleged, for the first time in the second amended complaint, claims under the Truth in Lending Act.  Plaintiffs also assert lender liability under the FTC "Holder Rule" and ORS § 83.820 against Ford Motor Credit Corporation; Onyx Acceptance Corporation; WFS Financial, Inc.; VW Credit, Inc.; and First Technology Credit Union.


A.   Lithia Defendants' Motion to Dismiss (#123)

The Lithia defendants move to dismiss the second amended complaint or strike portions of it.  Defendants assert many bases for dismissal:

1.   The Second Amended Complaint Violates Rule 8

As noted in the previous motions, plaintiffs' RICO claims are a moving target.  The theories regarding the alleged RICO enterprise and alleged RICO defendants continue to change, not only by amendment to

the complaint and RICO case statement, but also in response memoranda. Counsel's extremely lengthy pleadings add to this confusion.

Plaintiffs first submitted claims that failed to allege fraud with particularity.  In response to a motion to dismiss, plaintiffs did nothing, claiming they were waiting for the court to issue an order to file a RICO case statement.  The court obliged and plaintiffs amended their complaint and filed a RICO case statement.  Defendants moved to dismiss, contending in part that plaintiffs failed to allege a distinct RICO enterprise and RICO defendant.  The first amended complaint indicated that the alleged "enterprise" is the finance and insurance departments within defendant Lithia's corporation.  In response to the motion to dismiss, plaintiffs alleged that there is within each finance and insurance department at the Lithia subsidiary dealerships, a criminal "enterprise" that operates approximately 20% of the sales and lease transactions being processed by these Lithia subsidiary dealerships which does not constitute the 'normal affairs' of the defendant corporation.  The court granted the motion to dismiss for failure to allege an enterprise distinct from the defendant. Plaintiff sought reconsideration to allow amendment to allege the following alternatives:

    a. natural persons as the RICO persons and Corporations as
        enterprise;

    b.   natural persons/parent/subsidiaries as RICO persons and
        association-in-fact enterprise between contracting parties

of Lithia parent/subsidiaries and lenders as enterprise; and

c.    natural persons and lender defendants Ford Motor Credit Corporation and Volkswagen Credit, Inc. as persons and association-in-fact between lenders and parent subsidiaries as enterprise.

The court granted the motion and plaintiff has now alleged that:

**A. Alternative One**: Under this alternative "RICO enterprises/persons" combination, the Plaintiffs allege that the individual and natural person Defendants in this action (hereinafter sometimes referred to as the "Individual Defendants"), together with the parent corporation, Defendant Lithia Motors, Inc., and its wholly owned subsidiary corporation, Defendant Lithia Motors Support Services, Inc., are the "RICO persons" and Defendants, as to Plaintiffs' federal RICO Act §1962(c) and (d), and Oregon RICO Act ORS 166.720(3) and (4) claims. Under this alternative "RICO enterprises/persons" combination, the "enterprise" is alleged to be an association-in-fact enterprise, within the definition and meaning of 18 U.S.C. §1961(4) and ORS 166.715(2), between the following contracting parties:

a. All of the Lithia automotive dealerships in the State of Oregon, including Lithia Toyota of Springfield, Oregon; Lithia Honda of Medford, Oregon; Lithia Volkswagen of Medford, Oregon; Lithia Toyota of Medford, Oregon; Medford BMW of Medford, Oregon; Lithia Chrysler Jeep Dodge of Medford, Oregon; Lithia Chrysler Jeep Dodge of Roseburg, Oregon; Klamath Falls Auto Center of Klamath Falls, Oregon; Lithia Grants Pass Auto Center of Grants Pass, Oregon; Lithia Dodge of Eugene, Oregon; Lithia Ford Lincoln Mercury of Roseburg, Oregon; Lithia Nissan of Medford, Oregon; Lithia Nissan of Eugene, Oregon; Saturn of Southwest Oregon of Medford, Oregon; Saturn of Eugene of Eugene, Oregon; and Lithia Subaru of Oregon City, Oregon; and/or the parent corporation, Defendant Lithia Motors, Inc., on the one hand; and

b. All lenders or finance companies purchasing retail installment contracts and/or making consumer leases to retail consumer purchasers and lessees at the above described Lithia automotive dealerships in the State of

Oregon, pursuant to master dealer agreements or other
established contractual arrangements for the providing of
established indirect financing on retail installment
contracts or consumer leases being purchased from the above
described Lithia automotive dealerships in the State of
Oregon, on the other hand; and

**B. Alternative Two**: Under this alternative "RICO
enterprises/persons" combination, the Plaintiffs allege
that the Individual Defendants are the "RICO persons" and
Defendants, as to Plaintiffs' federal RICO Act 18 U.S.C.
§1962(c) and (d) and Oregon RICO Act ORS 166.720(3) and (4)
claims. Under this alternative "RICO enterprises/persons"
combination, the "enterprise" is alleged to be either:

1. The combination of the parent holding corporation,
Lithia Motors, Inc., its wholly owned subsidiary
corporation, Defendant Lithia Motors Support Services,
Inc,. and all of the Lithia vehicle dealership subsidiary
corporations or limited liability companies in the State of
Oregon, including Lithia Toyota of Springfield, Oregon;
Lithia Honda of Medford, Oregon; Lithia Volkswagen of
Medford, Oregon; Lithia Toyota of Medford, Oregon; Medford
BMW of Medford, Oregon; Lithia Chrysler Jeep Dodge of
Medford, Oregon; Lithia Chrysler Jeep Dodge of Roseburg,
Oregon; Klamath Falls Auto Center of Klamath Falls, Oregon;
Lithia Grants Pass Auto Center of Grants Pass, Oregon;
Lithia Dodge of Eugene, Oregon; Lithia Ford Lincoln Mercury
of Roseburg, Oregon; Lithia Nissan of Medford, Oregon;
Lithia Nissan of Eugene, Oregon; Saturn of Southwest Oregon
of Medford, Oregon; Saturn of Eugene of Eugene, Oregon; and
Lithia Subaru of Oregon City, Oregon, either as a single
entity or as association-in-fact enterprise, within the
definition and meaning of 18 U.S.C. §1961(4) and ORS
166.715(2); or

2. An association-in-fact enterprise, within the
definition and meaning of 18 U.S.C. §1961(4) and ORS
166.715(2), between the following contracting parties: an
association-in-fact enterprise, within the definition and
meaning of 18 U.S.C. §1961(4) and ORS 166.715(2), between
the following contracting parties,

a. All of the Lithia automotive dealerships in the
State of Oregon, including Lithia Toyota of Springfield,
Oregon; Lithia Honda of Medford, Oregon; Lithia Volkswagen
of Medford, Oregon; Lithia Toyota of Medford, Oregon;
Medford BMW of Medford, Oregon; Lithia Chrysler Jeep Dodge
of Medford, Oregon; Lithia Chrysler Jeep Dodge of Roseburg,
Oregon; Klamath Falls Auto Center of Klamath Falls, Oregon;

Lithia Grants Pass Auto Center of Grants Pass, Oregon; Lithia Dodge of Eugene, Oregon; Lithia Ford Lincoln Mercury of Roseburg, Oregon; Lithia Nissan of Medford, Oregon; Lithia Nissan of Eugene, Oregon; Saturn of Southwest Oregon of Medford, Oregon; Saturn of Eugene of Eugene, Oregon; and Lithia Subaru of Oregon City, Oregon; the parent corporation, Defendant Lithia Motors, Inc., and/or Defendant Lithia Support Services, Inc., on the one hand; and

b. All lenders or finance companies purchasing retail installment contracts and/or making consumer leases to retail consumer purchasers and lessees at the above described Lithia automotive dealerships in the State of Oregon, pursuant to master dealer agreements or other established contractual arrangements for the providing of established indirect financing on retail installment contracts or consumer leases being purchased from the above described Lithia automotive dealerships in the State of Oregon, on the other hand.

Second Amended Complaint (#83) pp. 34-36

Basically, the second amended complaint alleges two alternative enterprises, either: (1) an "association-in-fact" consisting of all Lithia dealerships in Oregon and all lenders which provide financing for customers of those dealerships; or (2) Lithia, Lithia support services, and all Lithia dealerships in Oregon as a single entity or "associated-in-fact" as separate entities.  There are now three separate groups of RICO defendants: (1) Lithia and its subsidiary support services; (2) Lithia directors and officers ("management level" defendants Sidney DeBoer (CEO), Dick Heimann (COO), Bill Daves (VP of administrative operations), Don Jones (senior VP of retail Operations), and Steve Philips (regional or area manager for Medford)); (3) Lithia employees ("dealership level" defendants Greg Coleman (sales manager of Lithia Toyota of Springfield), Keith DeSchane (finance and insurance manager Lithia Toyota of Springfield),

William Blanchard (general manager Lithia Honda and Volkswagen), Larry Pierce (general sales manager Lithia Honda), Reynoldo Aguilera (sales manager Lithia Honda), Steve Morrill (used car manager Lithia Honda and Volkswagen), Bob Taylor (sales manager Lithia Honda), Tim Stark (general sales manager Lithia Volkswagen), and John Hobbing (sales manager Lithia Volkswagen).  However, in response to the motion to dismiss, plaintiffs add a new enterprise theory: numerous "association-in-fact" enterprises consisting of individual dealerships and individual lenders.

Given that the second amended complaint is 507 pages (in addition to the 67 page RICO case statement) and contains unwieldy cross-references, it comes as no surprise that the Lithia  defendants move to dismiss the complaint for failure to comply with Fed. R. Civ. P. 8.

Fed. R. Civ. P. 8(a)(2) provides that a pleading for a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(e)(1) provides that "Each averment of a pleading shall be simple, concise, and direct."  There is authority for finding that a 507 page complaint is abusive.  See In re Glenfed, Inc. Sec. Litig, 42 F.3d 1541, 1553-54 (9th Cir. 1994) ("The complaint is unwieldy in the extreme. It is 113 pages long, and often rambles .... This is, at the very least, poor draftsmanship. It is impossible to overlook the fact that the organization of the complaint often makes the nature of the fraud difficult to divine, and certainly makes the complaint difficult to

respond to.... A complaint is not a puzzle, however, and we are loathe to allow plaintiffs to tax defendants ... with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint.)

However, given the number of plaintiffs (24 sets) a lengthy complaint is necessary even though plaintiffs pleadings are longer than necessary.  The motion is denied on this basis, but the court will not allow any further attempts to change the  RICO theory.

### 2.   Plaintiffs Impermissibly Seek to Expand the Scope of RICO

This argument is more of general commentary on the abuse of RICO litigation in an effort to get treble damages for ordinary fraud.  The motion is denied on this basis.

### 3.   Plaintiffs Lack Standing To Assert RICO Claims

The Lithia defendants contend that the purported damages, loss of down payment, debt incurred for a vehicle loan, and finance charges are not damages supporting a RICO claim.  In essence, defendants attack the merits of plaintiffs' claims by asserting that plaintiffs are simply seeking to transform their vehicle purchases into an economic windfall.  This is not an appropriate argument on a motion to dismiss.

For the most part, plaintiffs seek to have the court save them from themselves through this action, i.e., prevent defendants from selling vehicles to plaintiffs that plaintiffs cannot afford.

Nonetheless, plaintiffs allege damages beyond simply voluntarily getting themselves in over their head, such as fraudulently inducing plaintiffs to pay a higher price than a vehicle was worth and plaintiffs also allege that the fraud itself resulted in the action to buy vehicles that plaintiffs could not afford.  The motion to dismiss on this basis is denied.

3.   Plaintiffs Fail to Plead an Association-In-Fact Enterprise with Respect to Lithia and Lithia Support Services

As noted above, the second amended complaint alleges three distinct groups of RICO defendants: (1) Lithia and Lithia Support Services; (2) the management level defendants; and (3) the dealership level defendants.  The Lithia defendants contend that plaintiffs do not plead an enterprise distinct from Lithia and Lithia support services.

To state a claim under (RICO), 18 U.S.C. § 1961 et seq., plaintiffs must allege that they have been injured by "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Jarvis v. Regan, 833 F.2d 149, 151- 52 (9th Cir. 1987). The heightened pleading standard of Fed. R. Civ. P. 9(b) applies to RICO claims.  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004).  The elements for RICO and Oregon RICO are essentially the same and thus the two statutes are interpreted consistently.  See Ahern v. Gaussoin, 611 F.Supp. 1465, 1494 (D.Or. 1985).  Plaintiffs

allege RICO claims pursuant to section 1962(c) and section 1962(d) (conspiracy).

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "'[E]nterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit." <u>United States v. Computer Sciences Corporation</u>, 689 F.2d 1181, 1182, 1190 (4th Cir. 1982). Plaintiffs allege in one alternative that Lithia and Lithia support services are part of the enterprise or are corporate RICO defendants in another alternative.

As RICO defendants (along with management and dealership level individual defendants) the alleged enterprise is "all Lithia dealerships in the state of Oregon associated in fact with all lenders providing indirect financing for consumer purchases [or] leases." Defendants contend this alternative fails to plead an association-in-fact enterprise.

An "enterprise" is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). RICO recognizes formal and informal organizations alike. <u>See</u> <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981). Accordingly, an enterprise may be a formal legal entity or extra-

legal association-in-fact.    As noted above, plaintiff relies on
allegations of an association-in-fact.

A RICO enterprise is an ongoing structure of persons associated
through time, joined in purpose, and organized in a manner amenable
to hierarchical or consensual decision making. Jennings v. Emry, 910
F.2d 1434, 1440 (7th Cir. 1990).    A group cannot be an enterprise,
however, unless it exists independently from the racketeering
activity in which it engages. It must have some sort of structure for
making decisions and mechanisms for controlling and directing the
affairs of the group on an on-going basis rather than an ad hoc
basis. A conspiracy is not a RICO enterprise.    Simon v. Value
Behavioral Health, Inc., 208 F.3d 1073, 1083 (9th Cir. 2000).  Here,
plaintiffs do not even allege a conspiracy between the dealers and
the lenders, rather plaintiffs acknowledge that the lenders were
victims of the alleged fraud. See Second Amended RICO case Statement
(#89) at pp. 13-14.    Plaintiffs allegations can only demonstrate
normal business relationships between the dealers and the lenders
separately.

Moreover, plaintiffs fail to allege a common purpose between the
members of the ostensive enterprise, nor could they.    While it is
possible that the dealers have a common purpose, the lenders compete
with each other for business.    There are no allegations of some grand
collusion between the lenders, or a joint venture or some other

contractual relationship between the lenders.[1]  In addition, there are no particularized allegations of a structured decision-making process.

In response, plaintiffs assert yet another theory (not alleged in the second amended complaint) that the enterprise is now individual dealerships and individual lenders in some sort of joint venture.  Plaintiffs rely on <u>River City Markets, Inc. v. Fleming Food West, Inc.</u>, 960 F.2d 1458, 1462-63 (9th Cir. 1992), apparently because the court stated virtually every business contract can be called an association-in-fact.  However, plaintiffs fail to note that the court also required that the enterprise otherwise fall within the statutory proscriptions,  <u>Id</u>. at 1461, such as decision-making and common purpose.  There are no properly pleaded allegations of apparently numerous association-in-fact enterprises. Plaintiffs, accordingly, fail to allege the necessary decision-making process, common purpose,

---

[1]Plaintiffs argue that they have alleged some sort of joint venture arising out of an established master dealership contractual relationship existing between the lenders and dealerships.  But there are no allegations of a joint venture amongst the lenders and, as noted, they in fact compete with each other.  However, it is clear that plaintiff can not prove a common purpose, etc. among <u>all</u> lenders.  It would be futile to require defendants to move for summary judgment just to show that there is no single contract amongst all the lenders and all the dealers showing a grand joint venture.  Plaintiff has failed to even plead the single dealer/single lender enterprise where conceivably there is a contract to show a common purpose to profit from financing of motor vehicles.  <u>See</u> Second Amended RICO Case Statement at p. 46 (purpose of enterprise discussed with respect to all lenders and all dealers but describing apparently individual contracts with each dealer and each lender.  Plaintiffs plead "on information and belief")

etc.    As    noted    above,    RICO    claims    must    be    alleged    with
particularity.[2]

In this case, plaintiffs allege that Lithia and Lithia Support
Services operated their own business and entered into some sort of
contract with the lenders.  This is insufficient to allege existence
of a centralized decision-making authority.  Plaintiffs, at best,
allege an arms-length agreement between alleged members of an
enterprise, not a centralized decision making authority.  See Stachon
v. United Consumers Club, 1999 WL 971284, at *3 (N.D. Ill. Oct. 21,
1999):

> Accordingly, that UCC, over its 21-year existence,
> contracted with numerous manufacturers, suppliers, and
> members fails to establish an "ongoing structure."
> Plaintiffs offer nothing to demonstrate that the changing,
> unnamed manufacturers, suppliers, and members function with
> UCC as a continuing unit or as an ongoing structure. See,
> Richmond, 52 F.3d at 645-46 (affirming dismissal of
> complaint where complaint failed to specifically allege
> "structure, continuity, and common course of conduct" with
> respect to alleged non-defendant enterprise participants);
> cf. Hartz v. Friedman, 919 F.2d 469, 471 (7th Cir. 1990)
> (questioning whether a group of lawyers who previously
> represented plaintiffs fulfilled the "structure, purpose,
> and continuity" requirements to qualify as an "enterprise").
> Further, Plaintiffs offer nothing to show that the alleged
> "enterprise" **is more than UCC simply contracting with**

---

[2]Plaintiffs cite a Southern District of New York case for the
proposition that when pleading the enterprise element, a plaintiff
need comply only with the notice pleading set forth in Rule 8 of
the Federal Rules of Civil Procedure.  See Breslin Realty Corp. v.
Schackner, 397 F.supp.2d 390, 403 (E.D.N.Y. 2005).  Even so,
plaintiff has utterly failed to plead the single dealer/single
lender enterprise.  Conceivably, such allegations could suffice for
the bare minimum at the pleading stage.  Moreover, in response to
the first motion to dismiss, plaintiffs counsel failed to respond
claiming that he was waiting for direction from the court with
respect to a RICO case statement.  Accordingly, the court ordered
plaintiffs to file a RICO case statement describing "in detail the
alleged enterprise for each RICO claim," including "the structure,
purpose, function and course of conduct of the enterprise."  Order
of January 14, 2004 (#7).

**members and suppliers**. See El-Issa v. Compaq Computer Corp., No. 97 C 5839, 1997 WL 790730, at *3 (N.D.Ill.Dec. 19, 1997) (holding that competing retailers that function as ordinary retail distribution agents for defendant Compaq are not a "structure," even though retailers' employees train together on the use of Compaq computers and retailers act as conduits for Compaq's advertisements); cf. Jennings, 910 F.2d at 1441 (affirming dismissal of complaint because allegations of various law enforcement personnel's illegal investigative actions failed to indicate that a structure existed through which the law enforcement personnel worked their purpose); Fitzgerald, 116 F.3d at 227. Plaintiffs provide, and the court finds, no case law to support that a purchasing club's (or any corporation's) ordinary business dealings with past and present manufacturers, suppliers, or members constitute a structure.

(Emphasis added).

Plaintiffs have alleged nothing more than business relationship with secondary lenders. Plaintiffs allege, Lithia "[p]rovides contractual authority to conduct business with the lender members" of the enterprise. Second Amended RICO Case Statement at p. 50.

The motion to dismiss the RICO section 1962 (c) claim against Lithia and Lithia support services is granted.


4. Plaintiffs Fail to Plead Any Predicate Acts Committed by the Management Level Defendants

Defendants argue that plaintiffs RICO claims against the management level defendants are based only on an aiding and abetting theory and there are no allegations of any predicate acts committed by any of these defendants.

Plaintiffs contend that there is much more than simple aiding and abetting pleaded in the RICO case statement. Plaintiffs allege defendants DeBoer, Heimann, Daves, Jones, and Phillips

used their officer, supervisory and management positions
... to conceal, mask, condone, and facilitate the
"fraudulent schemes" .... Plaintiffs allege in this regard
that these Management Level Defendants: (a) **Aided and
abetted the "predicate acts" alleged in the Plaintiffs
Second Amended Complaint**... which ... arose out of the
"fraudulent schemes alleged in Plaintiffs' Second Amended
Complaint ...; (b) Knew of the commission of these
"predicate acts" arising out of these "fraudulent schemes;"
and (c) **Acted with intent to facilitate these "predicate
acts" arising out of these fraudulent schemes through their
knowing and fraudulent management, negligent oversight, and
unjust enrichment from such "predicate acts" and
"fraudulent schemes"** being conducted within and at each of
the Lithia vehicle dealerships.... These Management Level
Defendants ... used one or more of the ... "RICO
enterprises" as a "passive tool" to fraudulently extract
money from retail consumers...."
            ****
        **The acts or omissions of these Management Level
Defendants** undertaken to conceal, mask, facilitate, and
further the subject "predicate acts" arising out of the
"fraudulent schemes" and "patterns of racketeering
activity" alleged in Plaintiffs' Second Amended Complaint
... **included, but were not limited to, the following**:
        a. Submitting of false and misleading Securities and
Exchange Commission ("SEC") filings with regard to the
parent corporation, Lithia Motors, Inc., **essentially
denying** that the parent corporation, Lithia Motors, Inc.,
or any its subsidiary corporations or limited liability
companies, including **their managers, employees, agents,
officers, or directors, had ever engaged in any of the
"predicate acts" and "fraudulent schemes"** alleged in
Plaintiffs' Second Complaint and hereunder described in
this Second Amended RICO Case Statement;
        b. Making of false statements to the press and media,
essentially **denying** that the parent corporation, Lithia
Motors, Inc., or any of its subsidiary corporations or
limited liability companies, including **their managers,
employees, agents, officers, or directors, had ever engaged
in any of the "predicate acts" and "fraudulent schemes"**
alleged in Plaintiffs' Second Amended Complaint and
hereunder described in this Second Amended RICO Case
Statement;
        c. **Failing** purposefully to create or enforce any
effective mechanism of oversight and control with regard
to the operations of the Finance and Insurance and Sales
Departments in each of the Lithia vehicle dealerships in
the State of Oregon, in order **to prevent or discourage the**

**undertaking of the "predicate acts" and "fraudulent schemes"** alleged in Plaintiffs' Second Amended Complaint and hereunder in this Second Amended RICO Case Statement;

d. Establishing incentive and bonus programs at each of the Lithia vehicle dealerships in the State of Oregon, which the Management Level Defendants knew or reasonable should have known served to **encourage and increase the level and number of transactions that would be tainted and subject to the "predicate acts" and "fraudulent schemes"** alleged in Plaintiffs' Second Amended Complaint and hereunder described in this Second Amended RICO Case Statement

e. Putting extreme pressure and threats of job loss on Lithia vehicle dealership store personnel in the State of Oregon to meet inordinate "average profit per retail unit" quotas and volume of vehicles sold sales levels at each Lithia vehicle dealership store in the State of Oregon, and thereby **indirectly causing and promoting the undertaking of the "predicate acts" and "fraudulent schemes"** alleged in Plaintiffs' Second Amended Complaint and hereunder described in this Second Amended RICO Case Statement;

f. **Promoting individuals** within the Lithia Automotive Group chain of Lithia vehicle dealership stores, **who** these Management Level Defendants knew or reasonably should have known had **engaged directly in the "predicate acts" and "fraudulent schemes"** alleged in Plaintiffs' Second Amended Complaint and hereunder described in this Second Amended RICO Case Statement;

g. **Failing to undertake any reasonable investigation of the existence of any of such "predicate acts" and "fraudulent schemes"** alleged in Plaintiffs' Second Amended Complaint, after creditable and convincing evidence and/or internal reporting was presented to these Management Level Defendants, which clearly established that the "predicate acts" and "fraudulent schemes" alleged in Plaintiffs' Second Amended Complaint and hereunder described in this Second Amended RICO Statement were occurring at the Lithia vehicle dealership stores in the State of Oregon; and/or

h. **Failing purposefully to implement any effective remedial or corrective actions as the result of the findings of any investigation of the "predicate acts" and "fraudulent schemes"** alleged in Plaintiffs' Second Amended Complaint and hereunder described in this Second Amended RICO Statement, and instead deciding to essentially **deny the existence of any such fraudulent and illegal activity and to engaged in further deceptive practices, which concealed, facilitated, and furthered the "fraudulent schemes" and "predicate acts"** alleged in Plaintiffs' Second

> Complaint and hereunder in this Second Amended RICO Case
> Statement, so as to allow the continuance of the alleged
> "pattern of racketeering activity" and the profits being
> generated from such criminal activities to be made for
> their own monetary benefit.

Second Amended RICO Case Statement at pp. 5-8. (emphasis added)

While plaintiffs present a lengthy list of alleged wrongs, they all state roughly the same thing: the management level defendants aided and abetted the predicate acts, failed to prevent them, or failed to rectify them.  Plaintiffs fail to allege that any of these defendants engaged in the alleged mail fraud, wire fraud, or other fraud that caused their damage.  Indeed, plaintiffs concede that "it was the Dealership Level Defendants that directly caused the racketeering activities to occur." Response (#219) at p. 20.  While there is some case law to suggest an aiding and abetting theory of liability under section 1962(c), the majority view is that there is no aiding and abetting liability under 1962(c).  See Westways World Travel v. AMR Corp., 182 F.Supp.2d 952, 961 (C.D.Cal. 2001):

> ARC contends that aider and abetter liability under 1962(c)
> did not survive Central Bank of Denver, N.A. v. First
> Interstate Bank of Denver, 511 U.S. 164, 114 S.Ct. 1439,
> 128 L.Ed.2d 119 (1994). In Central Bank, the United States
> Supreme Court held because there was no language within the
> Securities Exchange Act of 1934 § 10(b) ( "Section 10(b)")
> creating liability for aiding and abetting, there was no
> aiding and abetting liability under Section 10(b). See
> Central Bank, 511 U.S. at 177-78, 114 S.Ct. at 1448. The
> majority of courts which have addressed the issue since
> Central Bank have concluded that there is no basis to
> distinguish Section 1962(c) under RICO from Section 10(b),
> and thus there is no aiding and abetting liability under
> Section 1962(c) See Rolo v. City Investing Co. Liquidating
> Trust, 155 F.3d 644, 656-657 (3rd Cir. 1998).

However, this is not to say that plaintiffs' allegations will not suffice to plead a conspiracy claim under section 1962(d), should the court find plaintiffs have sufficiently alleged a section 1962(c) claim against the dealerships defendants. See Salinas v. United States, 522 U.S. 52, 65 (1997) (It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense). Accordingly, while the motion is granted on this basis, it is granted in favor of the management defendants with respect to the section 1962(c) claim only.

5.  Plaintiffs Fail to Plead that the Dealership Defendants Operated an Enterprise

Defendants argue that there are insufficient allegations that the dealership level defendants operated or managed any alleged enterprise.  The alleged enterprises with respect to these defendants are either all Lithia dealers in Oregon associated in fact with all lenders or Lithia Motors, Inc., Lithia Support Services, Inc., and all Lithia dealerships in Oregon.

Under section 1962(c), a plaintiff must show that the members of the enterprise conducted or participated, "directly or indirectly, in the conduct of such enterprise's affairs ...." 18 U.S.C. § 1961(c). The term "conduct" implies some degree of direction over the

enterprise's activities; "participate" implies merely some part in that direction. Reves v. Ernst & Young, 507 U.S. 170, 177-80, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). In Reves, the Supreme Court approved the use of an "operation or management" test to determine whether an entity conducts or participates in a RICO enterprise. Id. at 179-85.

The weaknesses noted above with respect to Lithia and Lithia Support Services operating and managing an enterprise that consists of the lenders is amplified here as there are no allegations that these defendants some how control the lenders through the unidentified master dealer agreement(s). Plaintiffs argue that there is a sufficient degree of participation with respect to the Lithia enterprise because operation is not just by upper management, but lower rung participants under the direction of upper management.[3]

An enterprise is operated not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. Reves, 507 U.S. at 184. It is not clear just how far down the ladder the lower rung participants can be, but defendants argument appears to be based on the fact that since management level employees did not engage directly in the predicate acts, then the Reves lower rung analysis cannot apply.

---

[3]Plaintiffs also argue that some of the dealership level defendants were in management at individual dealerships and thus actually operated and managed the enterprise. However, the dealerships only form part of the alleged enterprise which consists of Lithia Motors, Inc., Lithia Support Services, and all Lithia dealerships and there are no allegations that the dealership level defendants managed this enterprise "as a single legal entity" or "associated in fact" separate legal entities.

However, the issue is whether the alleged defendants operated or managed the enterprise which was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit.  A group cannot be an enterprise, however, unless it exists independently from the racketeering activity in which it engages.  Accordingly, plaintiffs have alleged that management level defendants operated the Lithia entities which are alleged to be the enterprise and the dealership level defendants were under their direction.  The motion to dismiss is denied on this basis.


6.   Plaintiffs Fail to Plead a Pattern of Racketeering Activity Against the Dealership Level Defendants

Defendants argue that plaintiffs have failed to plead a pattern of racketeering activity as to each individual dealership level defendant.

Plaintiffs must allege that each individual defendant engaged in a pattern of racketeering activity.  See Starfish Investment Corp v. Hansen, 370 F.Supp.2d 759, 780 (N.D.Ill. 2005) (liability under RICO is limited to persons who have personally committed at least two predicate acts of racketeering); USA Certified Merchs., LLC v. Koebel, 262 F.Supp.2d 319, 332 (S.D.N.Y.2003)(citing DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987) ("[W]here more than one defendant is charged with fraud, it is necessary for a plaintiff to particularize and prove each defendant's

participation in the fraud and each defendant's enactment of the two necessary predicate acts.").[4]

The alleged predicate acts are wire fraud and mail fraud. Second Amended RICO Case Statement at pp. 16-17.

The case statement alleges numerous predicate acts, but fails to attribute at least two predicate acts for five of the individual defendants: Steve Morrill and Bob Taylor (no alleged predicate acts at all); William Blanchard and Greg Coleman (no predicate acts except conclusory allegation that predicate acts were committed at their direction); and Keith DeSchane (only one predicate act). See Second Amended RICO Case Statement at pp. 17-28. Accordingly, the motion to dismiss these defendants is granted.[5]

---

[4]Plaintiffs cite United States v. Stapleton, 293 F.3d 1111, 1116-17 for the proposition that each co-schemer is liable for the "predicate acts" of another and therefore does not need to personally engage in the "predicate act." Plaintiffs put predicate acts in quotes as if to suggest the court was considering RICO and its continuity requirement as established by vicarious liability. However, Stapleton was an ordinary mail and wire fraud case and did not involve charges of violation of the RICO statute and continuity is not even a requirement for mail fraud. Plaintiffs also cite United States v. Fernandez, 338 F.3d 1199, 1221, n. 11, for the proposition that attributing each predicate act to specific defendants is improper methodology for the determination of whether a "pattern of racketeering activity" exists. However, the footnote does not state this, it states: "Two predicate acts are necessary, but not sufficient, to prove a violation of § 1962(c): the pattern element also requires proof of "relatedness" and "continuity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239-41, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004). The evidence presented at trial clearly established all the elements of a pattern of racketeering activity, and Appellants do not claim that the government did not prove relatedness or continuity."

[5]However, to the extent any defendants are left on the section 1962(c) claim, defendants William Blanchard and Greg Coleman and possibly Keith DeSchane could be liable on the conspiracy claim (section 1962(d)).

To establish the predicate act of mail or wire fraud a plaintiff must allege that the defendant engaged in (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires. USA Certified Merchants, 262 F.Supp.2d at 332 (quoting United States v. Autuori, 212 F.3d 105, 115 (2nd Cir. 2000)).  It must be alleged that "the defendant knowingly participated in the scheme and that the misrepresentations were material." Id. at 332.  Although the mail or wire communications at issue need not themselves contain fraudulent communications, they must be incident to an essential part of the scheme, which itself has a fraudulent and deceptive purpose.  id.

As noted above, where a plaintiff is alleging predicate acts involving mail and wire fraud, the allegations must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.  In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989); see also Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 992-93 (7th Cir. 1991) (explaining that mere references to plans

and schemes are too conclusory to satisfy Rule 9(b)); Atl. Gypsum Co. v. Lloyds Int'l Corp., 753 F.Supp. 505, 512 (S.D.N.Y.1990) (concluding that allegations that "the entire loan transaction was part of a scheme by all defendants or some of them to gain 'control' of [a] venture" were inadequate to withstand a motion to dismiss as the complaint "sets forth no facts from which the existence of such a scheme reasonably can be inferred").

To prevail on a RICO claim, a claimant must establish a "pattern of racketeering activity." 18 U.S.C. § 1962. At a minimum, a pattern of racketeering activity requires at least two predicate acts that are related and continuous. Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995). Continuity can be either open- or closed-ended. Plaintiffs may establish closed-ended continuity by showing the related predicate acts occurred over a substantial period of time. Id. Although racketeering activities "extending over a few weeks or months" do not satisfy the "substantial period of time" requirement, there is no "bright line rule" regarding the amount of time required to show closed-ended continuity. Id. at 1528. Even though the alleged criminal activities do not span a substantial period, a plaintiff may establish open-ended continuity by showing either that the predicate acts include a specific threat of repetition extending indefinitely into the future or that the predicate acts were part of an ongoing entity's regular way of doing business. Id. at 1527. Predicate acts that specifically threaten repetition or that become a regular way of doing business satisfy the

open-ended continuity requirement. Id. at 1528.  The fortuitous
interruption of criminal acts does not preclude a finding of
open-ended continuity.  Id. at 1529.

As to defendant John Hobbing, plaintiffs allege two predicate
acts of fraud occurring on the same day:

> On or about April 14, 2001, Defendant John Hobbing, sales
> manager for Lithia Volkswagen of Medford, Oregon, caused
> to be fraudulently altered a credit application for
> customer Ericka Doran in connection with her lease of a
> 2001 Volkswagen Jetta. The alleged fraudulent alteration
> of Ms. Doran's credit application was done without the
> knowledge or consent of Ms. Doran, and consisted of
> changing her stated gross income from $1,500.00 per month
> to a gross income of $2,800.00 per month. Defendant Hobbing
> then caused the fraudulently altered credit application to
> be transmitted via wire facsimile from the Lithia
> Volkswagen dealership in Medford, Oregon to VW Credit, Inc.
> in Portland, Oregon. Further, it is alleged that within 14
> days of the wire facsimile transmission of the alleged
> fraudulent credit application, the credit application was
> subsequently deposited in the United States mail by the
> finance and insurance clerk for Lithia Volkswagen of
> Medford, under the direction of Defendants William Jay
> Blanchard, and John Hobbing, for delivery to VW Credit,
> Inc. in Portland, Oregon. Further, it is alleged that
> within 10 days of the lease of the subject vehicle, the
> lease agreement for the lease, containing the fraudulently
> increased money factor of 7.7% and the fraudulently
> increased "agreed upon value of the vehicle" in the amount
> of $1,700.00 was subsequently deposited in the United
> States mail by the finance and insurance clerk for Lithia
> Volkswagen of Medford, under the direction of Defendants
> William Jay Blanchard, and John Hobbing, for delivery to
> VW Credit, Inc. in Portland, Oregon.
>
> On or about April 14, 2001, Defendant John Hobbing, sales
> manager for Lithia Volkswagen of Medford, Oregon, caused
> to be fraudulently altered a credit application for
> customers J. Annette and Marvin Strain in connection with
> their purchase of a1999 Volkswagen New Beetle. The alleged
> fraudulent alteration of the Strains' credit application
> was done without the knowledge or consent of the Strains,
> and consisted of changing Mrs. Strain's stated gross income
> from $300.00 per month to $3000.00. Further, Defendant
> Hobbing falsified a Kelly Blue Book "book-out sheet,"

generated in connection with the 1999 Volkswagen New
Beetle. Hobbing then caused the fraudulently altered credit
application and falsified "bookout" sheet to be transmitted
via wire facsimile from the Lithia Volkswagen dealership
in Medford, Oregon to WFS Financial, Inc. in Grants Pass,
Oregon. The falsified "book-out sheet" submitted by wire
to WFS Financial, Inc. represented vehicle accessories or
upgrades as being on the 1999 Volkswagen New Beetle, which
accessories or upgrades did not actually exist, to wit:
premium wheels; and leather seats. The alleged fraudulent
addition of accessories or upgrades caused the collateral
value of the vehicle to be falsely inflated in the amount
of $665.00. Further, it is alleged that within 14 days of
the wire facsimile transmission of the alleged fraudulent
credit application and "book-out sheet," the credit
application and "book-out sheet" were subsequently
deposited in the United States mail by the finance and
insurance clerk for Lithia Volkswagen of Medford for
delivery to WFS Financial, Inc. in Grants Pass, Oregon.

Second Amended RICO Case Statement at pp. 27-28.

Defendants contend that because the alleged predicate acts
occurred on the same day, the continuity requirement is not
satisfied, However, given the other allegations of management
approval along with other allegations of similar conduct by other
employees over a long period of time (August 2000 to July of 2002),
the court finds the open-ended continuity pleading requirement
satisfied.

Defendants contend that for the remaining dealership level
defendants (Larry Pierce, Reynoldo Aguilera and Tim Stark), the
allegations do not sufficiently plead wire or mail fraud because the
transmissions were intrastate. While wholly intrastate use of the
mails for fraudulent purposes violates the mail fraud statute, the
wire fraud statute is only violated through the interstate use of the
wires. Spitzer v. Abdelhak, 1999 WL 1204352, at *5 (E.D.Pa. Dec.15,

1999).  Though there is no allegation of an interstate wire transmission occurring as to these defendants, plaintiffs allege that the allegedly fraudulent documents were later mailed.

Defendants take issue with the mailing as lacking in particularity because the date of the mailing is not identified. Plaintiffs repeatedly allege that within 14 days of the wire transmission, the fraudulent document was placed in the mail.

Plaintiffs argue that, in this case, the information regarding the mailing date is wholly within the control of the corporate defendants.  It is true that Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery.  Emery, 134 F.3d at 1323.  However, the rule does not help a party who has made no effort to show that it has been unable to procure the needed information through reasonable investigation.  Id.  The purpose of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint.  Ackerman v. Northwestern Mutual Life Insurance Co., 172 F.3d 467, 469 (7th Cir. 1999).  This pre-complaint investigation must be of sufficient depth to assure that the charge of fraud is responsible and supported because charges of fraud can do great harm to the reputation of a business firm or other enterprise, are frequently charged irresponsibly and frequently ask courts to rewrite the parties contract or otherwise disrupt established relationships. Id. Insuring that fraud claims are well-founded is particularly important in the

RICO context where the potential for recovering treble damages makes such claims strong leverage in settlement negotiations. Nonetheless, it appears that plaintiffs have provided sufficient information regarding the mailings to satisfy the purpose of Rule 9.

Defendants also argue that the pleadings fail to allege how the use of the mail furthered the alleged fraudulent scheme because by the time of the alleged the mailings, the transactions were complete. However, defendants fail to note that all vehicle sales were subject to final approval of financing. Accordingly, the RICO section 1962(c) claim shall go forward as to these three dealership level defendants.

### 7.   Plaintiffs' 1962(d) Conspiracy Claim Fails as a Matter of Law

Defendants contend that if there is no section 1962(c) claim, there can be no section 1962d) claim. However, there are sufficient pleadings as to three dealership level defendants and therefore, the conspiracy claim against the management level defendants and defendants William Blanchard and Greg Coleman and Keith DeSchane shall go forward.

### 8.   Plaintiffs' Truth In Lending Act Claims Should be Stricken

For the first time in the second amended complaint, plaintiffs allege federal Truth in Lending Act Claims (TILA). Defendants note that the plaintiffs have not sought leave to plead these claims.

When plaintiffs sought to reconsider the court's dismissal of the case (based on dismissal of all of the federal claims), they did not assert that they were going to allege TILA claims and described amendments related solely to their RICO claims.[6]  Plaintiffs contend that at oral argument counsel mentioned TILA claims and because the court and defendants did not object, apparently permission to amend to add the new claims was granted.  Plaintiffs did not appropriately move to amend the complaint to add these claims and therefore they shall be stricken.

To the extent the court can construe the addition of the TILA claims as a motion to amend, defendants note that plaintiffs counsel wrote to defense counsel on May 1, 2004, stating that "plaintiffs' counsel researched whether TILA claims existed and that he decided not to pursue TILA claims."  Plaintiffs' counsel now asserts that recent discovery upon review of the "Deal Files" reveals there are bases for such claims.  Leave to amend is denied as plaintiffs have failed to demonstrate due diligence in researching and investigating fraud claims before filing the complaint.  The procedural history of this case demonstrates a moving target and defendants have already been required to expend considerable time and expense in an effort to discern the specifics of plaintiffs' claims.

Plaintiffs have demonstrated a lack of diligence in pursuing the TILA claims and the letter of May 1, 2004 can be construed as a

---

[6]Plaintiffs did not attach a proposed amended complaint to their motion for reconsideration or the motion to amend.

waiver or, at a minimum, demonstrates substantial prejudice to defendants if amendment is allowed.[7]

### 9. Plaintiffs Fail to Allege Fraud and Unlawful Trade Practices Act (UTPA) Claims with Particularity

Defendants contend that there is no particularity to the allegations of the false statements being alleged and/or which defendant allegedly made the statements, to whom, when and where. In response, plaintiffs simply state "plaintiffs have detailed ... the specific allegations in plaintiffs [second amended complaint and second amended RICO case statement] as they relate to the plaintiffs' RICO claims and the 'fraudulent schemes' which involve the use of the mails and wires." Response at p. 39. Plaintiffs plead the common law fraud claims generally, but do reference the alleged RICO fraud schemes. There appears to be who, what, where, and when in the allegations of fraudulent alteration of credit applications. Although it would appear that the allegations demonstrate a statute of limitations issue for some plaintiffs, the motion is denied on this basis.

---

[7]The court also notes that the plaintiffs face a significant obstacle with respect to the statute of limitations for bringing TILA claims as well.

10.  Plaintiffs  Fraud  Claims  are  Barred  by  the  Statute  of

Limitations

With  the  exception  of  plaintiff  Aimee  Phillips,  all  of  the

transactions at issue were consummated more than two years before the

original complaint was filed.  Plaintiffs allege that

> Plaintiff did not reasonably discover the unlawful method,
> act or practice giving this claim for relief under the UTPA
> until within one year of the commencement of this action,
> or equitable tolling applies to the Plaintiff's claim for
> the violation of the UTPA because of the acts and conduct
> of the Defendant Lithia Toyota of Springfield to actively
> hide and conceal the information required to know of the
> existence of this claim by the Plaintiff before the filing
> of this action and this Complaint.

Second Amended Complaint at p. 352.

Assuming  that  this  allegation  applies  to  the  fraud  claims  as

well, it is not enough under Oregon law.  Where the gravamen of an

action at law is fraud or deceit, the action must be commenced within

two years from the discovery of the fraud or deceit. ORS § 12.110.

"From the discovery of the fraud or deceit" means from the time the

fraud was known or could have been discovered through the exercise

of reasonable diligence.  Linebaugh v. Portland Mtg. Co., 116 Or. 1,

8 (1925).

> While some courts recognize a rule that it is sufficient
> in  an  action  for  fraud  to  merely  allege  that  the
> misrepresentation  was  not  discovered  within  the  time
> granted by the statute to bring the action, the majority
> of jurisdictions require that when the complaint shows the
> action  was  not  commenced  within  the  time  fixed  by  the
> statute of limitations it is necessary, in order to toll
> the statute, to set forth the reasons why there was not an
> earlier discovery of the fraud or deceit.

Huycke v Latourette, 215 Or. 173, 176 (1958).

A mere allegation in a complaint that the fraudulent act was unknown until a certain date is insufficient. <u>Id</u>. A complaint filed after the period provided by statute for the bringing of the action must negative lack of diligence in the discovery of the fraud. <u>Id</u>. at 177. When a suit is brought after the statutory time, plaintiff must plead the facts specifically and precisely. <u>Id</u>. The motion to dismiss the state law fraud claims is granted except as to plaintiff Aimee Phillips.

11. <u>Non-Economic Damages for Fraud Should be Stricken</u>

Plaintiffs allege non-economic damages for various anxiety, and emotional distress in an amount of up to $250,000. In Oregon, in an action for fraud, plaintiff's recovery is limited to that measured by the "out-of-pocket" rule unless the actionable misrepresentation was a warranty of value, in which case plaintiff could recover under the "benefit-of-the-bargain" rule. <u>Selman v. Shirley</u>, 161 Or. 582, 609, 85 P.2d 384, 91 P.2d 312 (1939).

Typically, fraud damages are the out-of-pocket loss or, if the misrepresentation was a warranty of value, the benefit of the bargain. <u>Staley v. Taylor</u>, 165 Or. App. 256, 264 (2000). If the fraud does not involve the sale of property, however, the proper measure of damages must be flexible to compensate the plaintiff for whatever loss she has suffered. <u>Dizick v. Umpqua Community College</u>, 287 Or. 303, 312 (1979) (damages include the wages not earned because of college enrollment which was fraudulently induced by promises of

certain types of training which never became available). Oregon appellate courts have never held that emotional distress damages can be recovered for a fraud claim. Staley, 165 Or. App. at 265 (expressing no opinion on the issue because plaintiff presented no evidence from which emotional distress damages could have been determined). Plaintiffs here have cited no cases awarding them. The court declines to permit the allegations in this case and the motion to strike is granted.

B.   Lender Defendants' Motions to Dismiss (#s 97, 107, 109, 110)

The Lender defendants (VW Credit Inc. (#97), First Technology Credit Union (#107), WFS Financial (#109), and Ford Motor Credit Corp. and Onyx Acceptance Corp. #110)) seek to dismiss the claims asserted against them. For the most part the Lenders raise the same arguments as the other defendants.

Certain of the plaintiffs allege derivative liability claims against the lenders based on the FTC holder rule contained in the notice in their retail installment contracts and/or Oregon's consumer paper assignee liability statute, ORS § 83.820. The claims are based on the underlying UTPA and common law fraud claims.[8] However, as to VW Credit, plaintiffs do not assert any derivative liability claims

---

[8]Plaintiffs do contend that they may seek leave in the future to allege direct liability claims. Plaintiffs have had numerous opportunities to amend the complaint. Years later, they shall not be allowed to claim on the one hand that the lenders are victims and then, upon discovery of a lack of derivative liability, switch course and claim the lenders are directly liable for fraud.

based on the FTC holder rule (only ORS § 83.820).  Plaintiffs allege TILA claims against VW credit.

1.    Plaintiffs Have Failed to Establish Any Claims Against the Lithia Defendants and, Accordingly no Derivative Liability can Arise

As noted above, plaintiffs plead the bare minimum to survive a motion to dismiss.  The motion to dismiss on this ground is denied.

2.    Derivative Liability

Plaintiffs do not allege any fraud or violation of the UTPA directly on the part of the lenders.  Indeed, plaintiffs have alleged that the lenders were victims of the fraud.  Plaintiffs do not cite any cases in Oregon finding derivative liability for another's violation of UTPA or common law fraud where the lender itself has committed no wrongdoing.  Consequently plaintiffs attempt to impose derivative liability through the FTC holder rule and Oregon's consumer paper law.  The case law in this area is in conflict, but the better reasoning weighs in favor of dismissal.

There are two major roadblocks to plaintiffs' assertion of derivative liability with respect to the allegations in this case: (1) compliance with TILA is a defense to state consumer law and fraud claims; and (2) even if the claims are not preempted by TILA, there are no alleged facts supporting rescission as required by the FTC rule.

The FTC Holder Rule requires that the following notice be given to consumers: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof...." 16 C.F.R. § 433.2(a).  "An assignee of the rights of the motor vehicle dealer, seller or lessor is subject to all claims and defenses of the buyer or lessee against the motor vehicle dealer, seller or lessor arising out of the sale or lease." ORS § 83.820(2)

In relevant part, TILA specifically permits "any civil action" or certain administrative proceedings for a TILA disclosure violation to be brought against an assignee of a creditor "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). Under this provision, Congress allows plaintiffs to sue consumer loan assignees for TILA violations only when the violation is facially apparent on the disclosure document. The TILA requires that certain disclosures be made in loan documents and authorizes consumers to sue for violations of the statute. The TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a).  Congress amended the TILA in 1980 to narrow considerably the scope of assignee liability in consumer loan transactions. Compare 15 U.S.C. § 1641 (1979), with section 1641(a) (1980); Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 200 (3rd Cir.

2000) (citing the legislative history at S.Rep. No. 96-73, at 2- 3, 96th Cong. 1st Sess. (1979), reprinted in 1980 U.S.Code Cong. & Admin.News 280, 281).  It was this 1980 amendment that limited the liability of voluntary assignees to violations "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a).  And this amendment occurred after the institution of the FTC holder rule.

Under Article VI, Clause 2, of the United States Constitution, Congress may preempt state law "either by express provision, by implication, or by a conflict between federal and state law." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995).  With regard to the TILA, Congress has preempted all state laws that are "inconsistent with the provisions of [TILA] and then only to the extent of the inconsistency." 15 U.S.C. § 1610(a)(1); see also Regulation Z, 12 C.F.R. § 226.28(a)(1) (2005).  State and federal laws are inconsistent when "compliance with both federal and state regulation is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982).

Oregon's consumer paper law, as contended by plaintiffs, would subject assignees to any liability claim that can be asserted against the automobile dealer.  This potential liability conflicts with the congressional purpose of the TILA 1980 amendment to restrict assignee liability and erects a barrier to Congress's purpose to hold assignees responsible only for disclosure failures that can be

observed on the face of the loan document.  It would be contrary to the TILA to hold the lender defendants liable under Oregon's consumer law for the alleged fraud of the Lithia defendants alleged in this case.  See Jackson v. South Holland Dodge, Inc., 312 Ill. App.3d 158, 1154 (2001) (the balance tipped in favor of assignees only being liable when the defect could be discovered by looking at the documents and a subsequent assignee simply is not legally responsible for the misrepresentations made by the dealer to the consumer-there is no duty of inquiry placed upon the assignee); id. at 152 (the overwhelming consensus is that compliance with TILA is an absolute bar to liability for fraud); Alexiou v. Brad Benson Mitsubishi, 127 F.Supp.2d 557, 565 (D.N.J. 2000) (broad potential liability conflicts with the congressional purpose of the TILA 1980 amendment to restrict assignee liability and erects a barrier to Congress's purpose to hold assignees responsible only for disclosure failures that can be observed on the face of the loan document). But see Irby-Green v. M.O.R., Inc., 79 F.Supp.2d 630, 633 (consumer claims against assignees which are not brought under TILA are not subject to TILA limits).

As noted in Psensky v. American Honda Finance Corp., 378 N.J.Super. 221, 226-27, 875 A.2d 290, 293-94 (2005)

> If the state law were not preempted, an assignee who conducts business nationally would be compelled to research the laws of all of the states to ensure that it is abiding by each and every law promulgated by the states.... That is the type of substantial burden that Congress intended to avoid by its 1980 TILA amendment. See also Pilgrim v. Metro Chrysler Plymouth Subaru, No. CIV.A.03-3219, 2005 WL 61454, at *1 (E.D.Pa. Jan. 11, 2005) (holding that the TILA

barred claims against bank-assignee where plaintiff alleged
violations of state and federal law but bank's liability
was solely derivative as holder of financing documents);
Vickers v. Interstate Dodge, 882 So.2d 1236, 1242-43
(La.Ct.App.2004) (without evidence that the forgery of
plaintiff's initials was apparent on the face of the note,
the assignee bank will not be liable).  Furthermore, the
FTC Holder Rule, 16 C.F.R. § 433.2, which, as we have
stated, places the assignee in the shoes of the seller with
regard to "all claims and defenses which the debtor could
assert against the seller" is also in conflict with the
TILA assignee liability provision.  The FTC rule as an
agency regulation, however, cannot trump the TILA's
[statutory] assignee liability mandates." Ramadan, supra,
229 F.3d at 202-03; see also Taylor, supra, 150 F.3d at
693. Instead, it is the TILA that supersedes the FTC Holder
Rule. See Walker v. Wallace Auto Sales, Inc., 155 F.3d 927,
935 (7th Cir.1998).

To the extent plaintiffs allege claims completely outside of the
area regulated by TILA, plaintiffs claims fail for the additional
reason that the allegations fail to demonstrate grounds for recession
which a majority of the courts require.

Under the FTC Holder Notice, a plaintiff's ability to recover
amounts already paid to an assignee is typically limited to the
circumstance where the plaintiff has "received little or nothing of
value from the seller." 40 Fed.Reg. at 53527 (1975).  In Costas v.
Mauro, 390 F.Supp.2d 720, 736, the court stated:

This rule is directed at the preservation of consumer
claims and defenses [which] means that a consumer can (1)
defend a creditor's suit for payment of an obligation by
raising a valid claim against the seller as a set-off, and
(2) maintain an affirmative action against a creditor who
has received payments for a return of monies paid on
account. The latter alternative will only be available
where a seller's breach is so substantial that a court is
persuaded that rescission and restitution are justified.
The most typical example of such a case would involve
non-delivery, where delivery was scheduled after the date
payments to a creditor commenced. Jackson, 258 Ill.Dec. 79,
755 N.E.2d at 472 (quoting 40 Fed.Reg. 53, 505, 53,524

(1975)) (emphasis added). In this regard, the FTC's official commentary on the Holder Rule further states:

> Consumers will not be in a position to obtain an affirmative recovery from a creditor, unless they have actually commenced payments and received little or nothing of value from the seller. In a case of non-delivery, total failure of performance, or the like, we believe that the consumer is entitled to a refund of monies paid on account.

40 Fed.Reg. at 53, 527 (1975). Case law in this district supports the view that substantial failure of performance on the contract is needed. <u>See, e.g.</u>, <u>Mount v. LaSalle Bank Lake View</u>, 926 F.Supp. 759, 763-64 (N.D.Ill.1996) (collecting cases)....

Plaintiffs suggest that "the better reasoned position is the one set forth in <u>Jaramillo v. Gonzales</u>, 132 N.M. 459, 50 P.3d 554 (2002)." (D.E. 36 at 10.) Although the Court need not pass definitively on the question, the Court would be strongly inclined to follow the majority (and perhaps uniform, given Plaintiffs' citation to the Jaramillo case) view in this district that in order to ground an affirmative recovery, conduct warranting rescission would be required. <u>Accord, e.g.</u>, <u>Mount</u>, 926 F.Supp. at 763-64. This view also appears to be the strong majority position nationwide. In this regard, in <u>Irby-Greene v. M.O.R.</u>, Inc., 79 F.Supp.2d 630 (E.D.Va.2000), Judge Ellis undertook an extensive survey of federal and state Case law in this area and explained that, "[i]n short, most courts have concluded that the primary purpose of the [FTC Holder] clause is to provide a defense to claims brought by the creditor; any affirmative use of the clause has generally been limited to the rare situation when the seller's breach renders the transaction practically worthless to the consumer." <u>Id</u>., 79 F.Supp.2d at 635-36 & nn. 19 and 20 (collecting cases; emphasis added); accord, e.g., Jackson, 258 Ill.Dec. 79, 755 N.E.2d at 472; Ford Motor Co. v. Morgan, 404 Mass. 537, 536 N.E.2d 587, 590 (1989) ( "The FTC did not intend that the rule would, as a matter of course, entitle a consumer to a full refund of monies paid on the account."). Here, there is no allegation that Plaintiffs were placed in a position where they suffered from a "total failure of performance," or from "non-delivery" of the vehicle, or from something that can be readily analogized to such a complete non-fulfillment of the contract by the vendor. See 40 Fed.Reg. at 53, 527 (1975).

Plaintiffs allegations do not, and cannot, be read to assert such worthlessness with respect to their transactions. Plaintiffs contend that their allegations that their vehicles have been repossessed and/or they have been required to declare bankruptcy (or an amendment to assert such allegations) would suffice to demonstrate that breach by the Lithia defendants is so substantial as to justify recision. Plaintiffs seem to confuse a possible cause of action for recision (e.g., a material misrepresentation allowing a plaintiff to back out of the deal and return the car upon the discovery of the fraud) with a bargain in which plaintiff receives virtually nothing of value. The fact of repossession or bankruptcy does not demonstrate anything close to that required to assert an affirmative action under the FTC Holder Rule. Amendment in this regard is futile and dismissal of claims based on the FTC holder rule is granted with prejudice.

In addition, the court finds that Oregon's consumer paper law at ORS § 83.820 does not allow plaintiffs claims to the extent they are not preempted because of the similarity in language with the FTC holder Rule. There are no Oregon cases interpreting the law. Plaintiffs cite a case in which the Oregon Court of Appeals interpreted a similar law with respect to direct loans. See Bennett v. Reliable Credit Assoc., Inc., 125 Or. App. 531 (1992). However, in that case, the plaintiff asserted that the car dealer did not provide the purchased product at all (insurance and a service contract) which justifies recision. Moreover, the plaintiff sought

direct liability against the lender for violation of unlawful debt collection practices, but the lender did not directly participate in the wrongdoing of the dealer.

To the extent plaintiffs seek to hold the lender defendants derivatively liable for the actions of the Lithia defendants the motion to dismiss the UTPA and fraud claims is granted with prejudice.


3.    TILA Claim Against VW Credit

Defendant VW Credit argues that the TILA claim against it is barred by the statute of limitations.

TILA requires that debtors bring their claims within one year of the date of the occurrence of an alleged violation.  15 U.S.C. § 1640(e).  The time runs from the date of the consummation of the transaction.  See Rowland v. Novus Fin. Corp., 949 F.supp. 1447, 1454 (D.HAW. 1996).  Of course the start period can be tolled.  See id.

In order for the plaintiffs to successfully argue the equitable tolling doctrine, they must show that the defendant concealed the fraudulent conduct and despite the exercise of due diligence, they were unable to discover that conduct.  Woolaghan, 140 B.R. 377, (Bankr.W.D.Pa. 1992).

> The fraudulent concealment doctrine requires more than mere
> non-disclosure. Otherwise the one-year statute of
> limitations would be tolled in almost every [TILA] action
> in which a non-disclosure was found and the statutory
> limitations provision would be a nullity. We conclude that
> Congress did not intend such a result.

Hughes v. Cardinal Fed. Savings & Loan Ass'n, 566 F.Supp. 834, 834-35 (S.D.Ohio 1983); See also Sutliff v. County Savings & Loan Co., 533 F.Supp. at 1310 (in order for the doctrine of fraudulent concealment to be applicable to a TILA claim, "there must be a fraudulent intention to prevent the disclosure"); Jones v. Transohio Savings Ass'n, 747 F.2d 1037, 1042 (6th Cir. 1984) (plaintiff alleged fraudulent concealment). The allegations already pleaded demonstrate that the facts were actually concealed from VW credit and therefore it could not have intended to conceal the fraud. The only allegation that plaintiffs offer is that VW credit provided Lithia with preprinted blank lease applications and forms.

Moreover, simply providing blank forms is insufficient as a matter of law to plead a TILA claim for non-disclosure. Plaintiffs make the incredible assertion that VW credit is the original lessor and overtook Lithia's role by providing the forms. An assignee may be a lessor in circumstances where the assignee has substantial involvement in the lease transaction. 12 C.F.R. Pt. 213, Supplement I. The court finds that the alleged involvement here simply does not amount to substantial involvement especially in light of the allegations that the lenders were victims of the alleged fraud perpetrated by the Lithia defendants. The TILA claim is dismissed as to VW Credit.

CONCLUSION

For the reasons stated above, the Lithia defendants' motion to dismiss (#123) is granted in part and denied on part.  In addition, the lender defendants' motions to dismiss (#s 97, 107, 109, and 110) are granted and VW Credit Inc., First Technology Credit Union, WFS Financial, Ford Motor Credit Corp. and Onyx Acceptance Corp. are dismissed.


DATED this __27th__ day of April, 2006.

                              ___s/ Michael R. Hogan_____
                              United States District Judge